## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAU VU,<br><br>       Plaintiff,<br><br>  v.<br><br>RENEWABLE ENERGY GROUP, INC.,<br>JEFFREY STROBURG, RANDOLPH L.<br>HOWARD, CYNTHIA WARNER, WALTER<br>BERGER, JAMES C. BOREL, DELBERT<br>CHRISTENSEN, DEBORA M. FRODL,<br>DYLAN GLENN, PETER J.M. HARDING,<br>NIHARIKA TASKAR  RAMDEV, and<br>CHRISTOPHER D. SORRELLS,<br><br>       Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br><br>**COMPLAINT FOR VIOLATIONS OF**<br>**FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## BACKGROUND

1.      This action concerns a proposed transaction ("Proposed Transaction") announced on February 28, 2022, pursuant to which Renewable Energy Group, Inc. ("Renewable Energy" or the "Company") will be acquired by Chevron Corporation ("Chevron").

2.       On February 27, 2022, Renewable Energy's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Chevron. Pursuant to the terms of the Merger Agreement, Renewable Energy stockholders will receive $61.50 in cash for each share of Renewable Energy common stock they own (the "Merger Consideration").

3.     On April 5, 2022, in order to convince Renewable Energy's stockholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading preliminary proxy statement (the "Proxy") with the United States Securities and Exchange Commission ("SEC").

4.     The Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

5.     In addition, the Proxy disclosed that a special meeting of Renewable Energy stockholders will be held to vote on the Proposed Transaction (the "Stockholder Vote").  It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so Renewable Energy stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.     This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C.

§ 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.  Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9.       Plaintiff is, and has been continuously throughout all times relevant hereto, an owner of Renewable Energy common stock.

10.       Defendant Renewable Energy is a Delaware corporation and a party to the Merger Agreement.  Renewable Energy common stock is traded on the NASDAQ under the ticker symbol "REGI."

11.       Defendant Jeffrey Stroburg is Chairman of the Board and a director of the Company.

12.       Defendant Randolph L. Howard is Vice Chairman and a director of the Company.

13.       Defendant Cynthia J. Warner is President, Chief Executive Officer, and a director of the Company.

14.       Defendant Walter Berger is a director of the Company.

15.       Defendant James C. Borel is a director of the Company.

16.       Defendant Delbert Christensen is a director of the Company.

17.       Defendant Debora M. Frodl is a director of the Company.

18.       Defendant Peter J. M. Harding is a director of the Company

3

19.    Defendant Christopher D. Sorrells is a director of the Company.

20.    Defendant Dylan Glenn is a director of the Company.

21.    Defendant Niharika Taskar Ramdev is a director of the Company.

## FACTS

22.    Renewable Energy is leading the energy and transportation industries' transition to sustainability by converting renewable resources into high-quality, sustainable fuels. Renewable Energy is an international producer of sustainable fuels that lower greenhouse gas emissions to reduce carbon impact.

23.    Chevron is a global energy corporation that discovers, produces, refines, markets, and distributes transportation fuels and lubricants, manufactures and sells petrochemicals and additives, and develops and implements technology to improve its business.

24.    On February 27, 2022, Renewable Energy Board caused the Company to enter into the Merger Agreement.

25.    On February 28, 2022, the Company issued a press release announcing the Proposed Transaction. The press release stated in part:

**SAN RAMON, Calif. & AMES, Iowa, February 28, 2022** — Chevron Corporation (NYSE: CVX) and Renewable Energy Group, Inc. (NASDAQ: REGI) ("REG") announced today a definitive agreement under which Chevron will acquire the outstanding shares of REG in an all-cash transaction valued at $3.15 billion, or $61.50 per share.

The acquisition combines REG's growing renewable fuels production and leading feedstock capabilities with Chevron's large manufacturing, distribution and commercial marketing position.

*** 

**Transaction Details**

The acquisition consideration is 100 percent cash. Total enterprise value of $2.75 billion includes a net cash position around $400 million greater than debt. The transaction has been approved by the Boards of Directors of both companies

and is expected to close in the second half of 2022. The acquisition is subject to REG shareholder approval. It is also subject to regulatory approvals and other customary closing conditions.

The transaction price represents a premium of around 57% on a 30-day average based on closing stock prices on February 25, 2022.

**Advisors**

Goldman Sachs & Co. LLC is acting as financial advisor to Chevron. Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal advisor to Chevron. Guggenheim Securities, LLC is acting as financial advisor and Latham & Watkins LLP is acting as legal advisor to REG.

26.     The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

27.     It is therefore imperative that the Company common stockholders receive the material information that Defendants have omitted from the Proxy so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

28.     Section 6.7 of the Merger Agreement provides for a "no solicitation" clause that prevents Renewable Energy from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

Section 6.7    No Solicitation.

(a)    The Company and its Subsidiaries will not, and the Company will direct and use its reasonable best efforts to cause its and its Subsidiaries' respective officers, directors, employees, investment bankers, consultants, attorneys, accountants, agents and other representatives not to, directly or indirectly, take any action to solicit, initiate, or knowingly encourage or knowingly facilitate the making of any Acquisition Proposal (including, without limitation, by granting any waiver under Section 203 of the DGCL) or any inquiry with respect thereto or engage in discussions or negotiations with any Person with respect thereto (except to notify such Person of the existence of the provisions of this Section 6.7), or disclose any nonpublic information or afford access to properties, books or records to any Person that has made, or to the Company's knowledge is considering making, any Acquisition Proposal, or propose publicly or agree to do any of the foregoing relating to an Acquisition Proposal. Nothing contained in this Agreement shall

prevent the Board of Directors of the Company from (i) complying with Rule 14e-2 under the Exchange Act with regard to an Acquisition Proposal or (ii) making any disclosure if, in the case of this clause (ii), in the good faith judgment of the Company's Board of Directors, after consultation with outside counsel, the failure to make such disclosure would be reasonably likely to be inconsistent with the directors' exercise of their fiduciary duties to the Company's stockholders under applicable Law; provided, however, that any such disclosure that relates to an Acquisition Proposal shall be deemed to be a Change in the Company Recommendation unless the Company's Board of Directors reaffirms the Company Recommendation in such disclosure. Notwithstanding anything to the contrary in this Agreement but subject to the first sentence of Section 6.7(b), prior to (but not after) the date of the Company Stockholder Approval, the Company may, directly or indirectly through its advisors, agents or other intermediaries, (A) furnish information and access, but only in response to a request for information or access, to any Person, and its representatives (including sources of financing), making a *bona fide*, written Acquisition Proposal to the Board of Directors of the Company after the date of this Agreement which was not obtained as a result of a breach of Section 5.2 or this Section 6.7 and (B) participate in discussions and negotiate with such Person or its representatives concerning any such unsolicited Acquisition Proposal, if and only if, in any such case set forth in clause (A) or (B) of this sentence, (1) the Board of Directors of the Company concludes in good faith, (x) after receipt of the advice of a financial advisor of nationally recognized reputation and outside legal counsel, that such Acquisition Proposal constitutes or would reasonably be expected to result in a Superior Proposal and (y) that failure to do so would be reasonably likely to be inconsistent with its fiduciary duties to the Company's stockholders under applicable Law and (2) (x) the Company receives from the Person making such an Acquisition Proposal, prior to engaging in any of the activities described in clause (A) or (B) of this sentence, an executed Acceptable Confidentiality Agreement and (y) any information provided to such Person has previously been provided to Parent or is provided to Parent prior to or substantially concurrently with the time it is provided to such Person. The Board of Directors of the Company shall not take any of the actions referred to in the foregoing clauses (A) and (B) unless the Company shall have first delivered to Parent written notice advising Parent that the Company intends to take such action; provided, that only one such notice need be given with respect to any specific Acquisition Proposal or amended or modified Acquisition Proposal.

29.     In addition, Section 9.5 of the Merger Agreement requires Renewable Energy to pay a $91 million "termination fee" if the Merger is terminated under certain conditions.

30.     Defendants filed the Proxy with the SEC in connection with the Proposed Transaction.  As alleged herein, the Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading.

31.     First, the Proxy omits material information regarding the Company's, financial projections.

32.     With respect to the Company's financial projections, the Proxy fails to disclose: (i) all line items used to calculate (a) Revenue, (b) Gross Margin, (c) Adjusted EBITDA, (d) Adjusted EBITDA after SBC, (e) Return on Invested Capital, and (f) Unlevered Free Cash Flows; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

33.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

34.     Second, the Proxy omits material information regarding the analyses performed by the Company's financial advisor, Guggenheim Securities, LLC ("Guggenheim").

35.     With respect to Guggenheim's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) terminal values of the Company; (ii) the individual inputs and assumptions underlying the discount rates range of 8.25% – 10.25% and perpetual growth rates of 0% to 2%; and (iii) the weighted average cost of capital of Renewable Energy.

36.     With respect to Guggenheim's *Selected Precedent Merger and Acquisition Transactions Analysis*, the Proxy Statement fails to disclose: (i) the closing dates of the transactions and (ii) the total value of all transactions observed.

37.     With respect to Guggenheim's *Premiums Paid in Selected Precedent Merger and Acquisition Transactions Analysis*, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in connection with selected precedent merger and acquisition transactions.

38.     With respect to Guggenheim's *Wall Street Equity Research Analyst Stock Price Targets analysis*, the Proxy Statement fails to disclose: (i) the sources of the Wall Street Equity Research and (ii) the price targets observed.

39.     The omission of the above-referenced material information renders the Proxy false and misleading.

40.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

## COUNT I

## (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that Proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43.     Defendants issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

44.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders as required.

45.     The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Proxy.  Defendants were also negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

46.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

47.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations

and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

51.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: April 21, 2022

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com
*Attorneys for Plaintiff*